IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| JOSEPH PARENTE, DAWN PARENTE, | ) | |
| PROVENCAL CONSTRUCTION COMPANY, | ) | |
| and KAY BROTHERS ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Nautilus Insurance Company, by and through its attorneys, Dana A. Rice and Adam P. Joffe of Hinshaw & Culbertson LLP, and for its Complaint for Declaratory Judgment against Defendants, Joseph Parente, Dawn Parente, Provencal Construction Company, and Kay Brothers Enterprises, Inc. (collectively, the "Defendants"), it states as follows:

## THE PARTIES

1.     Nautilus Insurance Company ("Nautilus") is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Illinois.

2.     At all times relevant hereto, Joseph Parente ("Joseph") was a citizen of Cook County, Illinois.

3.     At all times relevant hereto, Dawn Parente ("Dawn") was a citizen of Cook County, Illinois.

131308038v1 0982561

4.     At all times relevant hereto, Provencal Construction Company ("Provencal") was a corporation organized under the laws of Illinois with its principal place of business located in Burr Ridge, Illinois.

5.     At all times relevant hereto, Kay Brothers Enterprises, Inc. ("Kay Brothers") was a corporation organized under the laws of Illinois with its principal place of business located in Orland Park, Illinois.

## JURISDICTION

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

7.     Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district and all defendants are residents of the State of Illinois.

## THE UNDERLYING LAWSUIT

8.      On or about January 12, 2016, Kay Brothers filed a Verified Complaint for Copyright Infringement and Other Relief against Joseph, Dawn, and Provencal in the United States District Court for the Northern District of Illinois, in case number 1:16-cv-387 ("*Kay Brothers* Complaint" or "*Kay Brothers* Lawsuit").  (A copy of the *Kay Brothers* Complaint is attached hereto as **Exhibit A** and incorporated herein by reference.)

9.     According to the *Kay Brothers* Complaint, Joseph and Dawn are the owners of the real property located at 8734 Johnston Road, Burr Ridge, Illinois 60527 (the "Premises).  (Ex. A, ¶ 3.)

2

10.     The *Kay Brothers* Complaint asserts that Kay Brothers is in the business of building unique custom homes in the Chicagoland area.  (Ex. A, ¶ 5.)

11.     Kay Brothers is allegedly the owner of all rights, title, and interest in certain custom building plans and revisions thereto, which are the subject matter of the *Kay Brothers* Complaint.  These include an original custom building plan and a revised building plan.  (Ex. A, ¶ 5.)

12.     The *Kay Brothers* Complaint alleges that, on December 16, 2015, the United States Copyright Office issued certificates of registration for Kay Brothers' copyright in the revised building plan.  (Ex. A, ¶ 6.)

13.     The *Kay Brothers* Complaint alleges that the author of the original custom building plan and the revised building plan was R.A. Mifflin Architects ("R.A. Mifflin"), a non-party in the *Kay Brothers* Complaint.  (Ex. A, ¶ 7.)

14.     R.A. Mifflin allegedly assigned its interest in the original building plan to Kay Brothers on or about June 7, 2002, and assigned its interest in the revised building plan to Kay Brothers on or about December 15, 2015.  (Ex. A, ¶ 7.)

15.     The *Kay Brothers* Complaint alleges that R.A. Mifflin created the original building plan sometime in 2002, after Kay Brothers commissioned R.A. Mifflin to author, design, and prepare architectural plans for use on a property in Burr Ridge, Illinois.  (Ex. A, ¶ 8.)

16.     However, the *Kay Brothers* Complaint alleges that Kay Brothers never constructed the residence as planned.  (Ex. A, ¶ 9.)

17.     The *Kay Brothers* Complaint alleges that, sometime in 2002, Bob Kajmowicz, a principal of Kay Brothers, spoke to Joseph about utilizing the original building plan to construct a custom residence.  (Ex. A, ¶ 10.)

3

18.     Though Joseph allegedly expressed interest in the original building plan, he ultimately elected to construct a different residence in 2002.  (Ex. A, ¶ 10.)

19.     However, sometime in 2014, Joseph allegedly approached Kay Brothers and inquired whether it would still be willing to use the original building plan to construct a personal residence on the Premises.  (Ex. A, ¶ 11.)

20.     The *Kay Brothers* Complaint alleges that Kay Brothers informed Joseph that they could work with R.A. Mifflin to revise the original building plan to meet the personal preferences of Joseph and Dawn.  (Ex. A, ¶ 12.)

21.     The *Kay Brothers* Complaint further alleges that R.A. Mifflin proceeded to draft the revised building plan, noting that "the original building plans were prepared for Kay Builders." (Ex. A, ¶¶ 14-15.)

22.     The *Kay Brothers* Complaint alleges that the revised building plan was subsequently submitted to the Village of Burr Ridge, which approved the revised building plan and issued a building permit.  (Ex. A, ¶ 16.)

23.     The *Kay Brothers* Complaint alleges that, contemporaneous with the permitting of the revised building plans, Kay Brothers, Joseph, and Dawn continued to negotiate for Kay Brothers' construction of a residence using the revised building plan.  (Ex. A, ¶ 17.)

24.     The *Kay Brothers* Complaint further alleges that Kay Brothers, Joseph, and Dawn never consummated a contract, and the negotiations subsequently terminated.  (Ex. A, ¶ 18.)

25.     The *Kay Brothers* Complaint alleges that, at the time the negotiations terminated, Kay Brothers had performed preliminary construction based on its expectation that the parties would consummate a contract.  This preliminary construction allegedly included the installation of a construction fence, installation of waste servicing, a survey of the property, and payment for

4

a building permit application. Kay Brothers alleges that the preliminary construction was reasonably valued at $5,254.00. (Ex. A, ¶ 19.)

26.     The *Kay Brothers* Complaint alleges that, following the breakdown of contract negotiations between Kay Brothers, Joseph, and Dawn, a principal of Kay Brothers emailed Joseph to inform him that the revised building plan in Joseph's possession was the property of Kay Brothers and that Joseph was not entitled to utilize the revised building plan. (Ex. A, ¶ 20.)

27.     However, Joseph allegedly proceeded to inform the Village of Burr Ridge that Provencal would be his new general contractor for the construction of a residence on the Premises. (Ex. A, ¶ 21.)

28.     The *Kay Brothers* Complaint alleges that, on instructions from Joseph and Dawn, Provencal began construction of a residence utilizing the revised building plan. Provencal allegedly commenced its work on the project on August 13, 2015, notwithstanding its knowledge that the revised building plan belonged to Kay Brothers. (Ex. A, ¶¶ 22-23.)

29.     The *Kay Brothers* Complaint further alleges that, on August 17, 2015, at the direction of Joseph, an individual named Ron Vari emailed R.A. Mifflin in an effort to obtain "a release from the Kay [B]rothers indicating that [Joseph] now has ownership of the prints and he would be happy to pay the balance." (Ex. A, ¶ 25.)

30.     R.A. Mifflin allegedly responded to the August 17, 2015 email, stating that "As far as [Joseph's] request for a release of the plans from the Kay brothers, they are the property of Kay Brothers, I have nothing to say about that. You should contact them regarding the rights to the plans." (Ex. A, ¶ 26.)

131308038v1 0982561

31.     The *Kay Brothers* Complaint alleges that Kay Brothers never released ownership, title, and rights of the original building plan or the revised building plan to any person or entity. (Ex. A, ¶ 27.)

32.     The *Kay Brothers* Complaint alleges that, on July 17, 2015, Kay Brothers, through counsel, demanded that Joseph return the revised building plan and pay for the preliminary construction performed by Kay Brothers.  Kay Brothers allegedly received no response. (Ex. A, ¶ 28.)

33.     The *Kay Brothers* Complaint further alleges that, at present, Provencal is continuing to build the residence for Joseph and Dawn, utilizing the revised building plan.  (Ex. A, ¶ 29.)

34.     The *Kay Brothers* Complaint alleges that Provencal and/or Joseph have copied the revised building plan and provided it to third parties for the purpose of constructing the residence. (Ex. A, ¶ 31.)

35.     The *Kay Brothers* Complaint alleges that Kay Brothers owns all rights, title, and interest in the copyright of the original building plan and the revised building plan and have complied with the United States' Copyright Act.  (Ex. A, ¶ 32.)

36.     Notwithstanding Kay Brothers' ownership of the copyright of the original building plan and the revised building plan, Joseph, Dawn, and Provencal have allegedly produced illicit copies of the plans and have commenced construction of a residence using the plans without the consent of Kay Brothers.  (Ex. A, ¶¶ 34-36.)

37.     Count I of the *Kay Brothers* Complaint asserts a claim for copyright infringement and seeks monetary damages in an amount equal to Kay Brothers' actual damages, plus any additional profits from the infringement of its copyright; an order enjoining Provencal, Joseph,

6

and Dawn from using, reproducing, preparing derivative works of, and distributing copies of the revised building plan; and an order requiring Provencal, Joseph, and Dawn to impound and destroy all copies of the revised building plan. (Ex. A, ¶¶ 39-45.)

38. Count II of the *Kay Brothers* Complaint asserts a claim for unjust enrichment and seeks monetary damages in excess of $50,000. (Ex. A, ¶¶ 46-51.)

39. Count III of the *Kay Brothers* Complaint asserts a claim for conversion and seeks monetary damages in excess of $50,000. (Ex. A, ¶¶ 52-56.)

40. Count IV of the *Kay Brothers* Complaint asserts a claim for *quantum meruit* and seeks monetary damages in excess of $50,000. (Ex. A, ¶¶ 57-61.)

## THE NAUTILUS POLICY

41. Nautilus issued a commercial general liability insurance policy to Joseph Parente under policy number NN604491 for the policy period of September 29, 2015 to September 29, 2016 ("Policy"). The Policy is subject to a $1,000,000 limit for each "occurrence" for "bodily injury" and "property damage"; a $1,000,000 limit for each offense for "personal and advertising injury", and a $2,000,000 general aggregate limit. (A copy of the Policy is attached hereto as **Exhibit B** and incorporated herein by reference.)

## COUNT I

## NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM

42. Nautilus adopts and realleges the allegations in paragraphs 1 through 41 of its Complaint for Declaratory Judgment as paragraph 42 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

43. The *Kay Brothers* Complaint does not seek damages for "bodily injury," "property damage," or "medical payments," and, therefore, Coverage A (relating to "bodily injury" and

7

"property damage" liability) and Coverage C (relating to "medical payments") of the Commercial General Liability Coverage Form are not germane to this Complaint for Declaratory Judgment.

44.     Coverage B of the Policy, which pertains to personal and advertising injury liability, provides, in relevant part, the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM
* * *

## SECTION I – COVERAGES
* * *

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.     **Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. * * *

    **b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*See* Ex. B.)

45.     The Policy defines the terms "advertisement" and "personal and advertising injury" as follows:

1.     "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**     Notices that are published include material placed on the Internet or on similar electronic means of communication; and

8

131308038v1 0982561

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

(*See* Ex. B.)

46. The *Kay Brothers* Complaint alleges that:

"Notwithstanding that [Joseph] Parente, Dawn Parente, and Provencal lack any rights to use or benefit from Kay Brothers' copyrighted Second Work, the Johnston Residence currently being constructed by Provencal will be substantially similar, if not identical, to the unique, luxury residence set forth in the First Work and Second Work." (Ex. A, ¶ 34.)

47. Additionally, the *Kay Brothers* Complaint alleges that the "unlawful copying of the design of the Second Work, including the Johnston Residence's overall form, arrangement, composition of spaces and design elements, constitute willful violations of Kay Brothers' exclusive rights in and to their copyright works under the Copyright Act." (Ex. A, ¶ 37.)

131308038v1 0982561

48.     The Policy does not provide coverage for the *Kay Brothers* Complaint because it does not allege damages arising from "personal and advertising injury" as that term is defined in the Commercial General Liability Coverage Form, in that the use of Kay Brothers' copyrighted revised building plans to construct a residence for one's personal use – not to attract customers or supporters by broadcast or publication to the general public – does not constitute any of the offenses elucidated in the definition of "personal and advertising injury."

49.     Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit.

50.     An actual controversy exists between Nautilus, Joseph, Dawn, and Provencal, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.      Find and declare that the *Kay Brothers* Complaint does not allege a "personal and advertising injury" sufficient to trigger coverage under the Policy;

c.      Find and declare that Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit; and

d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

131308038v1 0982561

<u>COUNT II</u>

<u>THE POLICY'S "INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR
TRADE SECRET" EXCLUSION BARS COVERAGE</u>

51.     Nautilus adopts and realleges the allegations in paragraphs 1 through 50 of its
Complaint for Declaratory Judgment as paragraph 51 of Count II of its Complaint for
Declaratory Judgment as if fully set forth herein.

52.     The Policy contains the following exclusion applicable to Coverage B:

**2.     Exclusions**

This insurance does not apply to:

\* \* \*

**i.     Infringement Of Copyright, Patent, Trademark Or Trade
Secret**

"Personal and advertising injury" arising out of the infringement of
copyright, patent, trademark, trade secret or other intellectual
property rights.

However, this exclusion does not apply to infringement, in your
"advertisement", of copyright, trade dress, or slogan.

(*See* Ex. B.)(hereinafter referred to as the "Copyright Infringement Exclusion").

53.     Count I of the *Kay Brothers* Complaint explicitly asserts a claim for copyright
infringement. (Ex. A, ¶¶ 39-45.)

54.     Moreover, as discussed above with respect to the definition of "personal and
advertising injury," the exception to this exclusion does not apply because the copyright
infringement asserted in the *Kay Brothers* Complaint does not relate to an "advertisement," as
defined in the Policy.

55.     Pleading in the alternative, to the extent that the *Kay Brothers* Complaint alleges
"personal and advertising injury," which Nautilus expressly denies that it does, the Policy's

131308038v1 0982561

Copyright Infringement Exclusion bars coverage for the claims asserted in the *Kay Brothers* Complaint.

56.    Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit.

57.    An actual controversy exists between Nautilus, Joseph, Dawn, and Provencal, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the Copyright Infringement Exclusion bars coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint;

c.    Find and declare that Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## THE POLICY'S "MATERIAL PUBLISHED PRIOR TO POLICY PERIOD" EXCLUSION BARS COVERAGE

58.    Nautilus adopts and realleges the allegations in paragraphs 1 through 57 of its Complaint for Declaratory Judgment as paragraph 58 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

59.    The Policy contains the following exclusion applicable to Coverage B:

12

2.    **Exclusions**

This insurance does not apply to:

\* \* \*

c.    **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

(*See* Ex. B.)(hereinafter referred to as the "Material Published Prior To Policy Exclusion").

60.    The Policy incepted on September 29, 2015. (*See* Ex. B.)

61.    The *Kay Brothers* Complaint alleges that "[f]rom August 13, 2015 forward, Provencal has acted to build the Second Work and construct the Johnston Residence…" (Ex. A, ¶ 23.)

62.    The construction being conducted by Provencal is allegedly being performed on the instruction and direction of Joseph and Dawn. (Ex. A, ¶ 22.)

63.    Pleading in the alternative, to the extent that the *Kay Brothers* Complaint alleges "personal and advertising injury," which Nautilus expressly denies that it does, the Material Published Prior To Policy Exclusion bars coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint.

64.    Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit.

65.    An actual controversy exists between Nautilus, Joseph, Dawn, and Provencal, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to

131308038v1 0982561

declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.   Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.   Find and declare that the Material Published Prior to Policy Exclusion bars coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint;

c.   Find and declare that Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit; and

d.   Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE POLICY'S "KNOWING VIOLATION OF RIGHTS OF ANOTHER" EXCLUSION BARS COVERAGE

66.   Nautilus adopts and alleges the allegations in paragraphs 1 through 65 of its Complaint for Declaratory Judgment as paragraph 66 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

67.   The Policy contains the following exclusion applicable to Coverage B:

2.   **Exclusions**

This insurance does not apply to:

a.   **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(*See* Ex. B.)(hereinafter referred to as the "Knowing Violation Exclusion").

131308038v1 0982561

68.     The *Kay Brothers* Complaint alleges that "[a]fter contract negotiations had broken down, John Kajmowicz, one of the principals of Kay Brothers, e-mailed [Joseph] stating, 'be advised that the current plans you have in your possession for 8734 Johnston Road, Burr Ridge, IL are the sole property of Kay Bros. [A]ny use of the same is strictly prohibited.'" (Ex. A, ¶ 20.)

69.     The *Kay Brothers* Complaint further alleges that "[o]n December 16, 2015, the United States Copyright Office issued certificates of registration for Kay Brothers' copyright of the Second Work." (Ex. A, ¶ 6.)

70.     The *Kay Brothers* Complaint alleges that, notwithstanding Kay Brothers' exclusive right to use the revised building plan and Joseph, Dawn, and Provencal's knowledge of the Kay Brothers' right, Joseph, Dawn, and Provencal utilized the revised building plan to begin construction of the Premises.  (Ex. A, ¶ 43.)

71.     To the extent that the *Kay Brothers* Complaint alleges "personal and advertising injury," which Nautilus expressly denies that it does, the Knowing Violation Exclusion bars coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint.

72.     Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit.

73.     An actual controversy exists between Nautilus, Joseph, Dawn, and Provencal, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

15

131308038v1 0982561

b.     Find and declare that the Knowing Violation Exclusion bars coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint;

c.     Find and declare that Nautilus has and had no duty under the Policy to defend Joseph, Dawn, or Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit; and

d.     Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT V**

**PROVENCAL IS NOT AN INSURED UNDER THE POLICY**

74.     Nautilus adopts and realleges the allegations in paragraphs 1 through 73 of its Complaint for Declaratory Judgment as paragraph 74 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

75.     Section II of the Policy defines "Who Is An Insured", in relevant part, as follows:

**SECTION II – WHO IS AN INSURED**

**1.**     If you are designated in the Declarations as:

a.     An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. * * *

* * *

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

(Ex. B.)

76.     The Policy was issued to Joseph, an individual. (Ex. B.)

77.     Provencal was not named as an additional insured on the Policy and does not qualify as an insured under the "Who Is An Insured" provision of the Policy. Accordingly, Provencal is not entitled to coverage under the Policy for the claims asserted in the *Kay Brothers* Complaint.

16

78.    Nautilus has and had no duty under the Policy to defend Provencal against the *Kay Brothers* Complaint, or to indemnify Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit.

79.    An actual controversy exists between Nautilus, Joseph, Dawn, and Provencal, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that Provencal does not qualify as an insured under the Policy;

c.    Find and declare that Nautilus has and had no duty under the Policy to defend Provencal against the *Kay Brothers* Complaint, or to indemnify Joseph, Dawn, or Provencal for any judgment or settlement entered in the *Kay Brothers* Lawsuit; and

d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

NAUTILUS INSURANCE COMPANY


/s/ Dana A. Rice
One of its Attorneys


Dana A. Rice (#6283827)
Adam P. Joffe (#6300116)
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001

131308038v1 0982561

*Attorneys for Plaintiff – Nautilus Insurance*
*Company*